**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

DANIELA MARIA ROSA,                          Chapter 11

                                             Case No. 17-27826 (CMG)

              Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - -X

DANIELA MARIA ROSA,                          Adv. Pro. No. 17-01664 (CMG)

          Plaintiff,
v.

WELLS FARGO,

          Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - -X


**OPINION**

**APPEARANCES:**

**LAW OFFICES OF ANDY WINCHELL, PC**
**Andy Winchell, Esq.**
Attorney for Plaintiff

**REED SMITH LLP**
**Henry Falkner Reichner, Esq.**
Attorneys for Defendant


**CHRISTINE M. GRAVELLE, U.S.B.J.**

## I.    Introduction

This matter comes before the Court by way of Defendant, Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss the adversary complaint filed by Debtor/Plaintiff, Daniela Maria Rosa ("Rosa") for failure to state a claim.  At issue is whether Wells Fargo violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., ("RESPA") and Regulation X by failing to properly calculate Rosa's income when evaluating her application for loss mitigation, and failing to correct those errors when noticed by Rosa.  Because the failure to correctly evaluate a loss mitigation option is not a covered error under 12 C.F.R. § 1024.35(b), the motion is GRANTED as to any claims arising under that section.  However, Rosa has stated a claim for noncompliance with the provisions of 12 C.F.R. § 1024.41(h), and therefore the motion is DENIED as to any claims arising under that section.

## II.    Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 23, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (C), and (O).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.  Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

## III.    Facts

On June 21, 2005 Rosa executed a note in the amount of $799,600 payable to Credit Suisse First Boston.  The note was secured by a mortgage on Rosa's residence located at 23 Robin Road, Warren, NJ (the "Property").  Rosa defaulted on her obligations on July 1, 2009, resulting in an

August 14, 2014 final judgment in foreclosure being entered against her.  Rosa appealed the judgment, which was ultimately affirmed in the Appellate Division of the Superior Court of the State of New Jersey on July 25, 2016.

Nine months later, on April 25, 2017, Rosa submitted a loss mitigation application to Wells Fargo, the servicer of the loan.  The loss mitigation application listed a gross monthly income of $13,848.50.  Wells Fargo denied the application through a May 11, 2017 letter signed by "Malavanh Wood - Home Preservation Specialist" (the "Application Denial").  The Application Denial stated that Rosa was considered for a Repayment Plan Modification and a Proprietary Step Rate Program, but that Rosa was unable to qualify for either modification based upon her gross monthly income, which Wells Fargo calculated at $6,943.00.  The Application Denial stated that "[i]f you believe our decision on your eligibility for assistance is incorrect, you can appeal within 20 calendar days from the date of this letter."  Wells Fargo identified itself as the "account servicer" in the fine print of the Application Denial.

In response, on May 29, 2017 counsel for Rosa and her husband, James Rosa ("James"), sent a letter to Wells Fargo and separately to counsel for Wells Fargo which was referenced as an "appeal" to the determination that Rosa was not eligible for a loan modification, and alternatively as a "Notice of Error under 12 CFR Section 1024.35" (the "Appeal Letter").  The Appeal Letter posited that the determination of Rosa's gross monthly income was "clearly erroneous" as evidenced by three documents: (1) a 2016 profit and loss statement for "Rosa Agency" which showed $133,838 in annual commissions paid; (2) a 2016 profit and loss statement for "Lafayette Enterprises" which showed $32,344 in net annual rental income; and (3) Rosa's 2016 federal tax return, which showed a gross annual income of $172,859.  The Appeal Letter alleged that Wells Fargo violated RESPA and Regulation X by "failing to evaluate [Rosa's] request for loss

mitigation competently for loss mitigation (*sic*) after receiving a complete loss mitigation application as required by 12 C.F.R. § 1024.41 (c) and (d)." The Appeal Letter contained a demand that Wells Fargo:

> Please correct these errors and provide us with notification of the correction, the date of the correction, and contact information for further assistance; or after conducting a reasonable investigation and providing the borrower with a notification that includes a statement that you have determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents you relied upon in reaching this determination, information regarding how the borrower can request such document, and contact information for further assistance.

The letter advised that, in accordance with 12 C.F.R. § 1024.35, acknowledgement of its receipt was required within five days and a response was required within thirty days.

Wells Fargo replied to the Appeal Letter via a June 8, 2017 correspondence (the "Appeal Denial"). The correspondence did not substantively reply to the income issues raised in Rosa's appeal letter, but rather made the conclusory statement that "[a]fter carefully reviewing the information we currently have, we have determined that you still do not meet the requirements for a loan modification." This correspondence was also signed by "Malavanh Wood - Home Preservation Specialist." Once again, in the fine print of the Appeal Denial Wells Fargo referred to itself as the "account servicer."

Counsel for Rosa and James responded by sending to Wells Fargo and its counsel another "Notice of Error" letter (the "Error Letter"). This June 23, 2017 letter outlined the prior issue regarding income and stated that the denial of the appeal provided no "reason to believe that anyone reviewed or attempted to correct [Wells Fargo's] errors. To the extent that [Wells Fargo] did undertake a review [it] failed to provide 'the specific reasons for denying each trial or permanent loan modification option' and 'the specific criteria that the borrower failed to satisfy'

as required by 12 C.F.R. § 1024.41(d)."  As in the Appeal Letter, the Error Letter advised that, in accordance with 12 C.F.R. § 1024.35, acknowledgement of its receipt was required within five days and a response was required within thirty days.  The Error Letter also contained the same demand language as in the Appeal Letter.

Counsel for Wells Fargo responded to the Error Letter on August 3, 2017 (the "Reply Letter").  The Reply Letter stated simply that the requirements outlined in 12 C.F.R. § 1024.41(d), as referenced in the Error Letter, are not applicable to a decision rendered in response to an appeal conducted under 12 C.F.R. § 1024.41(h), and therefore no error existed.

Rosa filed an individual Chapter 11 bankruptcy on August 31, 2017.  James did not file either jointly or through a separate individual filing.  Schedule A lists the value of the Property at $875,000, and indicates that at least one other party holds an interest in the Property, presumably James.  On Schedule D Wells Fargo is listed as a secured creditor with a claim in the amount of $1,283,416.00, though the description notes that "Debtors dispute claim as to total amount of debt as of petition date & as to alleged arrears & dispute that scheduled party is lawful owner & holder of original note."  The schedule also indicates that only Rosa is an obligor on the debt.  James is not listed as a co-debtor with relation to the Property.  On Schedule I of her petition, Debtor lists her occupation as a "Stay at home mom" with a monthly income of $0.00.  James is listed as "Business Owner/Manager" of Rosa Agency with a monthly income of $17,413.00.  Wells Fargo has filed a proof of claim on behalf of U.S. Bank National Association, as Trustee for Adjustable Rate Mortgage Trust 2005-9, Adjustable Rate Mortgage Backed Pass Through Certificates, Series 2005-9, in the amount of $1,163,701.01, with a pre-petition arrearage of $541,371.91.  The proof of claim states that notices and documents should be sent to Wells Fargo.  It is signed by a

representative of Wells Fargo as the creditor's attorney or authorized agent.  The proof of claim attachment lists Wells Fargo as the "servicer."

On October 10, 2017, Rosa filed the present adversary case against Wells Fargo.  The complaint alleges that Wells Fargo violated RESPA and Regulation X by (1) failing to properly evaluate the Rosa's application for loss mitigation; and (2) failing to correct errors related to loss mitigation application once notified through Rosa's "Notices of Error."  In response, Wells Fargo filed this Motion to Dismiss the Adversary Proceeding, based upon three main contentions: (1) the error resolution procedures of 12 C.F.R. § 1024.35 are inapplicable to loss mitigation evaluations; (2) Wells Fargo fully complied with 12 C.F.R. § 1024.41; and (3) Wells Fargo is not a "servicer" as defined by RESPA.  Rosa opposed the motion, and the parties fully briefed the matter.  At the initial hearing this Court directed Rosa to resubmit, and Wells Fargo to accept and review, a loss mitigation packet.  After that attempt to obtain a loan modification was unsuccessful, the Court conducted oral argument and reserved decision.  After careful consideration of the positions of the parties, and for the reasons contained herein, the Court GRANTS IN PART and DENIES IN PART the motion.

## IV.  <u>Legal Analysis</u>

### <u>Standard for Motion to Dismiss</u>

Wells Fargo brings its motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), failure to state a claim upon which relief can be granted, which applies to bankruptcy adversary proceedings through Fed. R. Bankr. Proc. 7012(b).

To survive a motion to dismiss brought under Rule 12(b)(6) a complaint must contain enough factual matter to suggest the required cause of action.  *See* <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).  There is no requirement that the court find a likelihood of

success at the pleading stage, "but instead [must find] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" for recovery.  Id.  When reviewing a motion to dismiss brought pursuant to Rule 12(b)(6), the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).  The defendant bears the burden of showing no claim has been stated.  Id.

A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), citations omitted.  In its consideration of a motion to dismiss, the court must accept all of plaintiff's allegations as true, even if the court doubts their accuracy.  *See* id. at 556, *citing*, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n. 1, (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (well-pleaded complaint may proceed even if recovery unlikely).

### *RESPA Generally*

Congress enacted RESPA to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices" in the real estate mortgage industry, and to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). RESPA's implementing regulations, which are codified at 12 C.F.R. §§ 1024.1 to 1024.41 and known as "Regulation X,"

*see* 12 C.F.R. § 1024.1, prescribe additional duties and responsibilities of mortgage servicers under RESPA.

### Wells Fargo as Servicer

As a threshold issue, this Court must determine whether Wells Fargo fits the definition of "servicer" under RESPA and thus, whether any claim generally may be brought by Rosa against Wells Fargo under RESPA regardless of the specific facts of the case. Under RESPA the term "servicer" means "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments . . . as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Under New Jersey law a mortgage merges into the final judgment and ceases to exist. *See* Va. Beach Fed. v. Bank of N.Y./Nat'l Community Div., 299 N.J. Super. 181, 188 (App. Div. 1998). Wells Fargo posits that because the underlying loan ceases to exist, there are no longer any loan terms under which it may receive and distribute payments. Therefore, RESPA is inapplicable to the case at bar, and dismissal is appropriate. Wells Fargo finds support for this position in two unpublished decisions in this district which dismiss RESPA claims based upon this conclusion. *See* Perez v. Seterus, Inc., 2017 WL 5513687, at *4 (D.N.J. Nov. 16, 2017), *appeal docketed*, No. 18-1703 (3d Cir. Apr. 2, 2018) ("no obligation to respond" to QWR that was sent after the entry of final judgment in foreclosure because the "mortgage loan was extinguished" before communication was sent); Genid v. Fannie Mae, 2016 WL 4150455, at *3-4 (D.N.J. Aug. 2, 2016) (Seterus could not be servicer after final judgment in foreclosure). The Seventh Circuit Court of Appeals has adopted an even more expansive view, finding that where a lender assigned a mortgage post-default, it had no obligation under RESPA to provide the borrower with advance

notice of the assignment.  *See* <u>Daw v. Peoples Bank & Trust Co.</u>, 5 Fed. Appx. 504 (7th Cir. 2001).

The court held that once the default occurred, "there were no longer any scheduled periodic

payments to make or to collect, and thus there were no servicing rights to assign, sell, or transfer.

The assignment . . . is beyond the scope of [RESPA]."  <u>Id.</u> at 505.  *See also, e.g.,* <u>Bilek v. Bank of</u>

<u>America, N.A.</u>, 2011 WL 830948, at *5 (N.D. Ill. Mar. 3, 2011) ("Indeed, it is undisputed that the

Bridgeview Loan has been in foreclosure proceedings since September 26, 2007 based on the

Bileks' alleged default.  Thus, AHMSI was no longer 'servicing' the Bridgeview Loan as defined

by Section 2605(i)(3) when Christopher Bilek wrote the letters in August 2009.").

 The cases cited by Rosa provide no assistance to this Court in determining whether Wells

Fargo fits the RESPA definition of "servicer."  She cites to several unpublished decisions from

this district which do not directly address the contention that a party may not fit the definition of

"servicer" under RESPA after final judgment is entered.  Rosa contends that because these courts

allowed a borrower to proceed with RESPA claims where a final judgment in foreclosure had been

entered, they implicitly reject Wells Fargo's interpretation of RESPA.  *See* <u>Alfaro v. Wells Fargo</u>,

2017 WL 4969334 (D.N.J. Nov. 1, 2017); <u>Herrera v. Central Loan Admin. & Reporting</u>, 2017 WL

4548268 (D.N.J. Oct. 12, 2017); <u>Duffy v. Wells Fargo Bank</u>, 2017 WL 2364196 (D.N.J. May 31,

2017).  There is no evidence that the issue of the definition of "servicer" was considered by any of

the courts.  To the extent that the issue was raised, the opinions provide no analysis which may be

utilized by this Court in its examination.

 However, since the conclusion of briefing in this matter a split in this district has developed

among courts considering the definition of "servicer" under RESPA.  Additional courts have

endorsed the position that a foreclosure judgment extinguishes a mortgage, making claims under

RESPA inapplicable.  *See* <u>Roman v. Wells Fargo Bank, N.A.</u>, 2018 WL 2958583, at *2 (D.N.J.

June 13, 2018) (concluding that defendants were not servicers under RESPA where loan modification application submitted after foreclosure judgment); Kajla v. U.S. Bank National Association for Credit Suisse First Boston MBS ARMT 2005-8, 2018 WL 1128498, at *5 (D.N.J. Mar. 1, 2018), *appeal docketed*, No. 18-1718 (3d Cir. Apr. 3, 2018) (after foreclosure judgment, "the mortgage loan was already extinguished and Plaintiff could not avail himself of RESPA's protections.").

Other courts have found that the language of RESPA and Regulation X contemplates post-judgment responsibilities of servicers.  *See* Loconsole v. Wells Fargo Mortgage, 2018 WL 3158816 at *5-6 (D.N.J. June 28, 2018); Mannarino v. Ocwen Loan Serv., LLC, 2018 WL 1526558, at *4-5 (D.N.J. Mar. 28, 2018).  Specifically, both courts cite to 12 C.F.R. § 1024.41(g), which states that under certain circumstances "a servicer shall not move for *foreclosure judgment or order of sale, or conduct a foreclosure sale . . .*" (emphasis added).  On this basis the courts found that RESPA does apply to post-judgment, pre-sale claims.  *See* Loconsole v. Wells Fargo Mortgage, 2018 WL 3158816, at *6 (RESPA's loss mitigation procedures apply after entry of final judgment of foreclosure but before foreclosure sale); Mannarino v. Ocwen Loan Serv., LLC, 2018 WL 1526558, at *5 (regulations suggest servicer has obligation to Plaintiff until judicial sale completed; defendant's 'merger' theory lacks merit)

This Court agrees with the analysis in Mannarino and Loconsole.  As noted, adopting Wells Fargo's position that "servicing" under RESPA ceases post-foreclosure judgment, and therefore there can be no "servicer" after that event would have the effect of making several regulations superfluous.  In addition to § 1024.41(g), 12 C.F.R. § 1024.35(b)(10) lists "moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j)" as a covered notice of error requiring a response from the servicer.  A foreclosure sale cannot occur

absent a final judgment in foreclosure being entered.  If the definition of "servicer" only extends to the date of the final judgment, as Wells Fargo submits, then there would be no need to enact any regulations related to foreclosure sales.  It would be illogical to allow for a scenario where a borrower submits a notice of error regarding a foreclosure sale under the plain, unambiguous language of § 1024.35(b)(10), which explicitly contemplates and allows for such a request, only to find that there is no "servicer" who would be required to comply under RESPA.  Because foreclosure sales are referenced, the only reasonable reading of the regulations is that a party must still be considered a "servicer" up to at least that point, despite the entry of a final judgment in foreclosure.

Finding Wells Fargo to be a "servicer" is not at odds with the "merger" doctrine in New Jersey, due to the distinction between the definitions of "servicing" and "servicer".  A party can remain a "servicer" without "servicing" a loan.  *See* Buyea v. Select Portfolio Servicing, Inc., 2016 WL 5904502, at *2 (S.D. Fla. Oct. 11, 2016).  In Buyea the borrower sent a written request for information to the defendant requesting information as to the current owner or assignee of the loan. Id. at *1.  He alleged that the response was both insufficient and untimely under RESPA.  The court in Buyea considered the issue of whether, in light of the borrower's admitted default, the defendant fit the definition of "servicer" under RESPA.  It reviewed the Seventh Circuit's decision in Daws, however, it analyzed the statutory language of §§ 2605(i)(2) & (3) in finding that while servicing may end prior to foreclosure and judicial sale:

> The Court sees an important distinction between the definitions of servicing and servicer. . . the fact that Defendant was not servicing the loan does not mean that Defendant was no longer a servicer.  As defined under RESPA, "[t]he term 'servicer' means the person *responsible for* servicing of a loan." 12 U.S.C. § 2605(i)(2) (emphasis added). Whether or not Defendant was actively servicing the loan, Defendant remained responsible for servicing the loan at

the time it received Plaintiff's RFI.  Defendant was therefore a servicer and was obligated to respond to Plaintiff's RFI.

Id. at *3.  It is noted that in Buyea the borrower was only at the point of default, which is not when the "merger" doctrine applies, and not when the loan is extinguished.  There is a reasonable position that under Buyea a party remains a "servicer" after default, but not after judgment.  However, when read in connection with the provisions of RESPA and Regulation X requiring servicer action through foreclosure sale, it is apparent that to the extent that a party is not "servicing" a loan, it may still be a "servicer" post-judgment.

Finally, Wells Fargo's own actions belie its contention that it is not a servicer.  While we analyze the term only under the specific statute or regulation from which it derives, in this case RESPA, it is nonetheless notable that at every relevant step since final judgment Wells Fargo has held itself out to be, or specifically referenced itself as, a servicer.  Both the Application Denial and the Appeal Denial appear to have been written in a manner which demonstrate knowledge of and attempted compliance with RESPA and Regulation X, despite Wells Fargo's present position that those regulations were inapplicable to its relationship with Rosa.  Additionally, the Application Denial and the Appeal Denial both referred to Wells Fargo as the "account servicer." Even continuing into this bankruptcy, Wells Fargo has filed a proof of claim relating to the Property on behalf of another entity and referred to itself as "servicer" in the documents supporting the proof of claim.  It is disingenuous of Wells Fargo to act as a servicer at all times when dealing with Rosa and then claim it does not fill that role only after its methods were questioned.

For these reasons we find that Wells Fargo fits the definition of "servicer" under 12 U.S.C. § 2605(i)(2).

*Rosa's Claims Under RESPA*

Rosa brings claims pursuant to two provisions of RESPA.  First, she alleges that Wells Fargo failed to respond to her notices of error regarding the income issue in accordance with 12 C.F.R. § 1024.35.  Second, she alleges that Wells Fargo improperly evaluated her loss mitigation application and her appeal due in violation of 12 C.F.R. § 1024.41.

*12 C.F.R. § 1024.35*

Section 1024.35 is titled "Error resolution procedures," and provides, in relevant part:

> (a)  Notice of error.  A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

> (b) Scope of error resolution. For purposes of this section, the term "error" refers to the following categories of covered errors:

>> (1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.

>> (2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

>> (3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 C.F.R. § 1026.36(c)(1).

>> (4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

(6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 C.F.R. § 1026.36(c)(3).

(7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.

(8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

(9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).

(10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

(11) Any other error relating to the servicing of a borrower's mortgage loan.

$$* \qquad * \qquad * \qquad * \qquad * \qquad * \qquad * \qquad * \qquad *$$

(e) Response to notice of error.

(1) Investigation and response requirements.

(i)  In general. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A)  Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)  Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by

> the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

Rosa contends that Wells Fargo failed to comply with subsection (e) by not properly responding to either the Appeal Letter or the Error Letter as required under this section.  Neither Rosa's adversary complaint, nor her response to the motion at bar specify upon which category of covered error under § 1024.35(b) her claim arises.  The Court's analysis finds that the only category under which Rosa could plausibly state a claim is under § 1024.35(b)(11), the "catch all" provision for "any other error relating to servicing of borrower's mortgage loan."

While under its own plain language the "catch all" provision is broad, the Bureau of Consumer Financial Protection (the "Bureau") issued an official interpretation of the rules in which it considered the specific question of whether to add a failure to correctly evaluate a borrower for a loss mitigation option as a covered error.

> Both consumer groups and industry commented regarding whether to include a servicer's failure to correctly evaluate a borrower for a loss mitigation option as an error. One consumer group urged the Bureau to do so, asserting that because the Dodd-Frank Act requires servicers to take timely action to correct errors relating to avoiding foreclosure, the plain language of the statute suggests that borrowers should be able to assert errors related to loss mitigation before they get to the point of a foreclosure sale. The commenter further contended that the appeals process set forth in proposed § 1024.41(h) will not hold servicers sufficiently accountable for uncorrected errors. The commenter said that borrowers need a statutory remedy for uncorrected errors. Another consumer group advocated for a catch-all sufficiently broad to capture the array of servicer loss mitigation duties. An industry association took the opposing view, citing concerns about the inability to objectively measure whether a servicer evaluated a borrower for an option correctly. The industry commenter requested that should the Bureau add this category as a covered error, the Bureau also clarify that a servicer who complies with § 1024.41 has not committed the error.

As noted in the proposal, the Bureau believes that the appeals process set forth in § 1024.41(h) provides an effective procedural means for borrowers to address issues relating to a servicer's evaluation of a borrower for a loan modification program. For this reason, and the reasons stated below with respect to loss mitigation practices, the Bureau declines to add a servicer's failure to correctly evaluate a borrower for a loss mitigation option as a covered error in the final rule.

The Bureau is, however, adding new § 1024.35(b)(11), which includes a catch-all that defines as an error subject to the requirements of § 1024.35 errors relating to the servicing of a borrower's mortgage loan. The Bureau believes that any error related to the servicing of a borrower's mortgage loan also relates to standard servicer duties. The Bureau also agrees with consumer advocacy commenters that the mortgage market is fluid and constantly changing and that it is impossible to anticipate with certainty the precise nature of the issues that borrowers will encounter. The Bureau, therefore, believes that it is necessary and appropriate to achieve the purposes of RESPA to craft error resolution procedures that are sufficiently flexible to adapt to changes in the mortgage market and to encompass the myriad and diverse types of errors that borrowers may encounter with respect to their mortgage loans.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10743-44 (Feb. 14, 2013).  A fellow bankruptcy court in this district has utilized this official interpretation in holding that where a post-petition loan modification was denied, a notice of error is not the proper method to challenge of loss mitigation denial.  *See* Wiggins v. Hudson City Savings Bank, 2015 WL 4638452, at *8 (Bankr. D.N.J. Aug. 4, 2015) ("[I]f this determination was incorrect, the Debtors' remedy was to challenge it by invoking the appeals process of § 1024.41(h) and not the error resolution procedures of § 1024.35(b) (which, as is evident from the enumerated list of covered errors, deals primarily with mistakes involving the servicing of a loan, such as a failure to credit a payment or the improper imposition of a fee)").

Rosa challenges the findings of the Wiggins court, in part, on the basis that Wiggins mischaracterized the Bureau's official interpretation as "legislative history." Id.  She argues that

"the legislative history indicates that Congress considered permitting borrowers to file a notice of error challenging the correctness of a servicer's loss mitigation decision."  However, Rosa does not present a substantive argument as to why the court's analysis of the official interpretation is misplaced, or why said interpretation should not be afforded any deference.

Courts will generally defer to agency's reasonable interpretation of its own regulations unless the interpretation is plainly erroneous or inconsistent with the regulation.  *See* F.T.C. v. Wyndham Worldwide Corp., 799 F.3d 239, 251-52 (3d. Cir 2015) *citing* Auer v. Robbins, 519 U.S. 452, 461 (1997).  Numerous other courts, including the Wiggins court, have relied on the Bureau's interpretation in examining RESPA and Regulation X.  *See, e.g.,* Nash v. P.N.C. Bank N.A., 2017 WL 1424317, at *4 (D. Md. April 20, 2017); He v. Ocwen Loan Servicing, LLC, 2016 WL 3892405, at *2 (E.D.N.Y. July 14, 2016) (finding Bureau interpretation "highly persuasive because it fills in a gap in the text of Section 1024.41 and squarely addresses the factual situation described in the Complaint.").

There is an ambiguity in the language of the regulation as to whether the "catch all" provision applies to incorrect evaluations of loan modifications.  The provision only applies to errors related to the servicing of the loan.  While this Court finds that Wells Fargo is a servicer, the definition of servicing under RESPA is more limited, particularly considering Wells Fargo's arguments regarding the merger and extinguishment of a mortgage after final judgment of foreclosure.  It is appropriate to look towards the Bureau's interpretation for guidance.

That interpretation is clear - while the Bureau found that the "catch all" was expansive and that "any error related to the servicing of a borrower's mortgage loan also relates to standard servicer duties," which duties would presumably include loss mitigation, it nonetheless explicitly considered the exact issue of whether to make an incorrect evaluation of a loan modification a

covered error and declined.  It did not state that the reason for the exclusion was due to the fact

that the "catch all" provision was broad enough to cover such errors, but rather contemplated that

the appeal process set forth in § 1024.41(h) provided the necessary protections.  The official

interpretation indicates that the "catch all" was added to account for the unknown.  Issues regarding

errors in loan modification evaluations were a known potential issue which was explicitly

considered and which the Bureau declined to include as a covered error.  While the Bureau's

interpretation does not specifically opine as to whether the failure to correctly evaluate the <u>appeal</u>

of a denial of a loan modification is a covered error, it would be counterintuitive to interpret the

regulation in a way in which the initiating event (the loan modification application) is not a covered

error, yet the secondary event (the appeal), which arises solely out of the initiating event, is

somehow afforded the status of a covered error.

As with her arguments regarding the definition of "servicer," Rosa relies primarily on two

cases from this district more for the implicit suggestions inherent in the decision that loan

modification mistakes can be covered errors under RESPA versus any substantive analysis of the

issue.  In <u>Alfaro v. Wells Fargo</u>, 2017 WL 4969334, the court found that a notice of error in

response to error in review of loss mitigation application is a "plausible claim of relief for non-

compliance with 12 C.F.R. § 1024.35(e)."  <u>Id.</u> at *5.  <u>Alfaro</u> is a distinguishable scenario in which

the borrower sent a notice of error in response to the denial of her second loan modification

application.   The defendant in that case responded to the notice of error by providing an

explanation which directly contradicted the information in the denial of the first loan modification.

The court stated that "[g]iven the varying explanations Defendant offered for the treatment of the

Loan account, Plaintiff now properly and adequately asserts that no 'reasonable investigation' has

occurred with respect to her Notice of Error."  <u>Id.</u>  The key distinction is that there the defendant

responded to the notice of error, and thus the court found that the RESPA claim was under §
1024.35(e) for an inadequate <u>response</u> to the notice of error.  There was no analysis of whether the
underlying notice was based upon a covered error under § 1024.35(b).  In fact, the subsection does
not appear at any point in the decision.  While Rosa notes that the underlying motion was filed by
the same law firm as in her adversary proceeding and made many of the same arguments, the
opinion simply contains nothing which might provide any insight into whether the court truly
analyzed if a mistake in a loan modification evaluation constitutes a covered error under §
1024.35(b), or whether the court did not consider the issue because of the issuance of a response
to the notice of error, which then implicated § 1024.35(e).

Also distinguishable is <u>Herrera v. Central Loan Admin. & Reporting</u>, 2017 WL 4548268.
In that case the borrower submitted a request for information one day after the foreclosure sale to
determine the validity of a loss mitigation denial.  <u>Id.</u> at *1.  When the defendant did not respond,
the borrower then sent a notice of error.  <u>Id.</u>  Defendants responded to that notice of error in an
untimely fashion.  <u>Id</u>.  The response only indicated that the defendant had provided a full response
to prior letters submitted by the borrower.  <u>Id</u>.  The court in <u>Herrera</u> considered whether the initial
request for information the day after the sale constituted a "Qualified Written Request" under 12
U.S.C. § 2605(e)(1)(B)(ii).  There is no analysis of the issue as it relates to loan modifications
errors specifically, and no indication that the issue was either brought before or considered by the
court.  Additionally, the statute addressed by the <u>Herrera</u> court does not appear anywhere in Rosa's
adversary complaint, nor in her filings related to this matter.  The decision does not reference §
1024.35(b), and therefore could not have been based upon the Bureau's interpretation of that
subsection.  For these reasons, the case is of minimal persuasive value.

The other cases presented by Rosa also seek to avoid the Bureau's official interpretation without addressing Wells Fargo's position *vis-a-vis* the language of the regulation and the Bureau's official interpretation, and are thus unconvincing.

In summation, this Court has not been presented any analysis of § 1024.35(b) which provides a persuasive counterpoint to the Bureau's interpretation of the provision. The Bureau, the entity responsible for drafting § 1024.35, considered the precise issue of whether the incorrect evaluation of a loan modification is a covered error under the subsection. It sought out comments from the public, which set forth the pros and the cons of including such a provision. After considering all comments, it opted not to include a provision covering the incorrect evaluation of a loan modification as a covered error. Rosa's claim falls squarely within this issue, and is therefore not a covered error under § 1024.35(b). Any claim under this section must be dismissed.

### *12 C.F.R. § 1024.41*

Section 1024.41 is titled "Loss mitigation procedures," and provides, in relevant part:

> (a) Enforcement and limitations. A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f)). Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

> \*        \*        \*        \*        \*        \*        \*        \*        \*

> (c) Evaluation of loss mitigation applications.

> (1) Complete loss mitigation application. Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:

(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

\*        \*        \*        \*        \*        \*        \*        \*        \*

(d)  Denial of loan modification options. If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

\*        \*        \*        \*        \*        \*        \*        \*        \*

(h) Appeal process.

(1) Appeal process required for loan modification denials. If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

(2) Deadlines. A servicer shall permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section.

(3) Independent evaluation. An appeal shall be reviewed by different personnel than those responsible for evaluating the borrower's complete loss mitigation application.

(4) Appeal determination. Within 30 days of a borrower making an appeal, the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option. A servicer may require that a borrower accept or reject an offer of a loss mitigation option after an appeal no earlier than 14 days after the servicer provides the notice to a borrower. A servicer's determination under this paragraph is not subject to any further appeal.

Rosa alleges Wells Fargo committed violations under § 1024.41(c)(1)(i), for failure to properly evaluate her loss mitigation application, and under § 1024.41(h) for failure to properly handle the appeal process.

### *Subsection 1024.41(c)*

While § 1024.41(c)(1)(i) requires that a servicer must complete an evaluation upon receipt of a completed loss mitigation application, it does not place any requirements on the nature of the evaluation.  "The conduct of a servicer's evaluation with respect to any loss mitigation option is in the sole discretion of the servicer.  A servicer meets the requirements of § 1024.41(c)(1)(i) if the servicer makes a determination regarding the borrower's eligibility for a loss mitigation program."   Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. at 10896.  In her adversary complaint, Rosa makes the conclusory allegation that Wells Fargo failed to evaluate her for loss mitigation options as required under § 1024.41(c).  This is the exact type of formulaic recitation that the Supreme Court cautioned against in Twombly, and is insufficient to state a claim here.  The Application Denial set forth what options Rosa had been evaluated for, and why Wells Fargo found that she was unable to qualify for those

options.  There is no factual basis to account for an allegation that Wells Fargo failed to perform

any evaluation at all as to the loss mitigation application.

To the extent that Rosa believes that the evaluation was incorrect, that is not a claim under

§ 1024.41(c).  The Bureau contemplated that errors would occur in the evaluation of loss mitigation

options, writing:

> …the Bureau believes that, as with any complex and unique process,
> servicers may make mistakes in evaluating borrowers for loan
> modification options. The notice that the Bureau is requiring
> servicers provide borrowers to explain the reasons for the denial of
> a loan modification, which include inputs that may have been the
> basis for such denials, may help uncover such mistakes. Many of
> these mistakes can then be corrected if a servicer undertakes a
> second review where a borrower believes that such further review is
> warranted. Thus, the Bureau believes that borrowers may reasonably
> benefit from the opportunity to have an independent review at a
> servicer where the borrower believes a mistake was made in the
> evaluation of a loan modification option.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78

Fed. Reg. at 10835-36.  To find otherwise would have an unnecessarily punitive effect on servicers,

who would then be subject to liability any time they made any mistake whatsoever in evaluating a

loss mitigation application.  The Bureau's commentary highlights the unreasonableness of this

position.  First, the evaluation process is complex, and errors are an inevitability.  Second, the

existence of the appeal process allows for a means to address those errors by requiring that the

servicer take a second look at the application.  Rosa has not stated a claim under this subsection.

### *Subsection 1024.41(h)*

Alternatively, § 1024.41(h) governs the appeal process, and requires that when an appeal

is timely submitted, it shall be reviewed "by different personnel than those responsible for

evaluating the borrower's complete loss mitigation application."  § 1024.41(h)(3).  "The appeal

may be evaluated by supervisory personnel that are responsible for oversight of the personnel that

conducted the initial evaluation, as long as the supervisory personnel were not directly involved in

the initial evaluation of the borrower's complete loss mitigation application."  Mortgage Servicing

Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. at 10898.

The language of this subsection contains a two-part requirement.  First, there must be a

review.  Second, the review must by a different party than that who initially reviewed the loss

mitigation application.  Rosa's claim under this subsection is premised on the fact that because the

Application Denial was premised on an error in calculated income, there could not have been an

independent review which led to the same conclusion in the issuance of the Appeal Denial.  Wells

Fargo takes the position that the fact that the appeal was denied does not create a reasonable

inference of more than the mere possibility that this was the case.

The record before the Court is sufficient to sustain a claim relating to § 1024.41(h).  Rosa's

narrative that her income was understated by Wells Fargo is not based upon mere conclusory

allegations.  The Appeal Letter appended to the adversary complaint was specific in detailing the

amount of gross monthly income which she believed the application supported.  It provided

documentation which demonstrated the basis for her contention.  In reply, she received from Wells

Fargo the Appeal Denial, which contained no substantive response.  The Appeal Denial was signed

by the same Wells Fargo representative who signed the Application Denial.  It does not state that

there was any independent review.  None of Wells Fargo's papers relating to this motion contain

a certification by any representative stating that there was an independent review.

Wells Fargo attacks Rosa's adversary complaint as conclusory, yet it is Wells Fargo who

has doggedly refused to provide any information to respond to Rosa's legitimate concerns, relying

instead on a vague, conclusory Appeal Denial which does not even on its face state that it complies with § 1024.41(h).  There are numerous reasons why Wells Fargo could have calculated the income for Rosa at the lower figure.  For instance, while she is the obligor, the income supporting the application came from James, an obligor.  There is a (purely speculative) possibility that Wells Fargo was unwilling to determine the figure based upon the full income amount for a party who had no liability on the underlying debt.  However, based upon the record it also plausible that the calculation was an error, and the appeal process failed to properly review that initial error.  The Court need not speculate as to the validity of these examples, or as to any further plausible bases for the income calculation.  Wells Fargo's insistence on obfuscating its reasoning has subjected it to a potential claim under § 1024.41(h), and the discovery process will presumably provide additionally clarity.

This case does not stand for the proposition that any borrower who may be dissatisfied with an appeal determination may bring forth a claim under RESPA.  It is only because of the specific, supported, well plead facts in this case regarding the Appeal Letter that it is plausible to the Court that the Appeal Denial may have been the result of Wells Fargo failing to conduct an independent review of the appeal in violation of § 1024.41(h)(3).

### V.     <u>Conclusion</u>

It is disappointing that a case like this need be filed.  A borrower submits a loan modification application.  A servicer issues a denial.  There is a discrepancy which the borrower brings to the attention of the servicer.  Had the servicer shown even a modicum of respect for the borrower or her well-articulated concerns, this matter would have been resolved some time ago.  Instead, the servicer has insisted upon toeing the line of bare minimum compliance with RESPA.  While it remains to be seen whether Wells Fargo strictly complied with the statute and regulations,

its unwillingness to provide any transparency now requires that its attention and resources be devoted to the defense of this lawsuit.

There is some frustration in the fact that while § 1024.35 provides specific stricter safeguards for error resolution procedures, it does not apply to loss mitigation evaluations.  Instead, § 1024.41 controls those evaluations.  Within that section servicers are given great discretion on how they evaluate loan modification applications.  It should not be too much to ask, considering the wide latitude which they enjoy, for servicers to be able to articulate answers to reasonable inquiries regarding those applications.  Doing so would demonstrate unequivocal compliance with RESPA and would eliminate the need for actions such as the present adversary proceeding.

Irrespective of these feelings, this Court nonetheless finds that failure to correctly evaluate a loss mitigation application is not a covered error under § 1024.35(b), and therefore Rosa has not stated a claim under that section.  However, Rosa has presented facts sufficient to call into question whether Wells Fargo conducted an independent evaluation her the Appeal Letter as required under § 1024.41(h), and the motion to dismiss any claim arising under that provision is denied.

The Court will enter an order in accordance with this decision.


/s/Christine M. Gravelle
Dated: August 9, 2018                            United States Bankruptcy Judge