**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

| | |
|---|---|
| DANIELA MARIA ROSA, | Chapter 11 |
| | Case No. 17-27826 (CMG) |
| Debtor. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| DANIELA MARIA ROSA, | Adv. Pro. No. 17-01664 (CMG) |
| Plaintiff, | |
| v. | |
| WELLS FARGO, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES:**

**LAW OFFICES OF ANDY WINCHELL, PC**
**Andy Winchell, Esq.**
Attorney for Plaintiff

**REED SMITH LLP**
**Ethan R. Buttner, Esq.**
Attorneys for Defendant

**CHRISTINE M. GRAVELLE, U.S.B.J.**

I.      **Introduction**

Daniela Maria Rosa ("Debtor") moves before this Court for leave to amend her complaint against Wells Fargo Bank, N.A. ("Wells Fargo") to include causes of action under the New Jersey Law Against Discrimination ("LAD") and the New Jersey Consumer Fraud Act ("CFA"). The facts giving rise to both the existing counts and the proposed amended counts are the same. The genesis of the action is Wells Fargo's denial of a loss mitigation application submitted by Debtor.

Now, Debtor takes the position that Wells Fargo's failure to consider the income of her non-obligor husband, James Rosa ("James"), constitutes "discrimination" under the LAD and an "unconscionable commercial practice" under the CFA. Because this Court finds that James's income does not fall under the purview of the LAD, and because Debtor's CFA claim is dependent upon the LAD violation, the proposed amendment is futile and must therefore be DENIED.

II.     **Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 23, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (C), and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409. Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

**III.**    **Facts and Procedural History**

The underlying facts in this action were set forth in this Court's previous decision on Wells Fargo's Motion to Dismiss, In re Rosa, No. 17-27826 (CMG), 2018 WL 4352168, at *4–5, 2018 Bankr. LEXIS 2424 (Bankr. D.N.J. Aug. 9, 2018) ("Rosa I"). Those facts are incorporated herein. Summarily, Debtor, individually, executed a note and mortgage on her marital residence, where she resided with James. James did not sign the note or mortgage. It is not clear whether James is on the deed.

It is uncontested that Debtor defaulted on her obligations under the note and a final judgment in foreclosure entered against her in 2014. After the judgment was affirmed on appeal, Debtor submitted a loss mitigation application to Wells Fargo. Though the loss mitigation application listed a gross monthly income of $13,848.50, Wells Fargo denied the application based upon a gross monthly income of $6,943.00, approximately half of what Debtor claimed. The income derived from commissions and other income earned by James, not Debtor. Debtor appealed the denial. The appeal was also denied.

Debtor filed her Chapter 11 bankruptcy case on August 31, 2017. On October 10, 2017 she filed the present adversary proceeding against Wells Fargo, alleging violations of RESPA and Regulation X. Wells Fargo filed a Motion to Dismiss the Adversary Proceeding, which this Court granted in part and denied in part as explained in Rosa I. In the interim, the loan was transferred and Debtor obtained a loan modification from the new servicer.

Now, 17 months after Rosa I and after extensive mediation, Debtor brings this motion to amend her complaint. The amended complaint appended to her motion adds two additional causes of action. First, she alleges that Wells Fargo violated N.J.S.A. § 10:5-12 (the "Source of Income Provision"), by "discounting the non-salary, commission portion of the income by

roughly one hundred percent." *See* Proposed Amended Complaint ("Amended Complaint"), ECF No. 27-1, a ¶¶ 61-66.  Second, she alleges that Wells Fargo violated the CFA by virtue of its alleged violation of the LAD.  Id. at ¶¶ 67-77.  Debtor has added four (4) additional factual allegations to the Amended Complaint.  Paragraph 19 of the proposed Amended Complaint now alleges that Wells Fargo failed to have different personnel review the matter on appeal.  Id. at ¶ 19.  The proposed Amended Complaint also alleges that a portion of Debtor's monthly income is derived from her husband's sales commissions rather than from a salary, and that New Jersey law prohibits discrimination based upon the source of lawful income.  Id. at ¶¶ 24, 25.  Finally, Debtor now alleges that Wells Fargo has a "pattern and practice" of discriminating against borrowers whose income derives from commission.  Id. at ¶ 27.

Wells Fargo has opposed the motion on the basis that the proposed amendment is futile.  It bases its objection on two main theories: (1) that the Amended Complaint fails to state a claim under the LAD; and (2) that the LAD claim is barred by the statute of limitations.  Because the CFA claims flows from the LAD claim, Wells Fargo contends that count must also be dismissed.  Debtor filed a thorough response to Well Fargo's objections, and the Court conducted oral argument on March 10, 2020.

## IV.     Legal Standard

Fed. R. Bankr. P. 7015 makes Fed. R. Civ. P. 15 applicable in adversary proceedings.  The rule provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). The Supreme Court interpreted the rule in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962):

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. *See generally*, 3 Moore, Federal Practice (2d ed.1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.- the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Futility is grounds for denial of leave to amend if the proposed amendment cannot state a claim on which relief can be granted or withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" is therefore assessed under the Rule 12(b)(6) standard. Id.

To survive a motion to dismiss brought under Rule 12(b)(6) a complaint must contain enough factual matter to suggest the required cause of action. *See* Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). There is no requirement that the court find a likelihood of success at the pleading stage, "but instead [must find] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" for recovery. Id. When reviewing a motion to dismiss brought pursuant to Rule 12(b)(6), the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law. Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). The defendant bears the burden of showing no claim has been stated. Id.

V.    **Analysis**

A. Statute of Limitations

Wells Fargo states that in the intervening twenty-seven (27) months between the filing of the Adversary Complaint and the filing of this motion, the statute of limitations as to any LAD claims expired. The LAD is subject to the two-year statute of limitations established under N.J.S.A. 2A:14-2. Montells v. Haynes, 133 N.J. 282, 286 (1993); Anjelino v. New York Times Co., 200 F.3d 73, 97 (3d Cir. 2000). Here, Wells Fargo issued its final response to the loss mitigation packet on August 3, 2017. The present motion to amend, which contains the LAD claim, was not filed until January 6, 2020, outside of the two-year window.

Fed. R. Civ. P. 15(c) allows relation back of amendments to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "In accordance with the general theory of liberalized pleading in the federal system, Rule 15(c) is premised on the notion that a party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004).

Relation back is not proper or permitted "where the original pleading does not give a defendant 'fair notice of what the plaintiff's [amended] claim is and the grounds upon which it rests.'" Glover v. FDIC, 698 F.3d 139, 146 (3d Cir. 2012) *quoting* Baldwin City. Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984). In particular, amendments "that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." Id.

In this case the facts all relate back to the same occurrence, the evaluation and denial of the loss mitigation application. The original complaint alleged error, incompetence, and a failure to reasonably investigate, all largely based on Debtor's allegation that Wells Fargo failed to credit her with her husband's income. The amended complaint alleges an intentional act of discrimination, which gives rise to an entirely new claim. The Court questions whether the original complaint gave adequate notice of Debtor's allegation that Wells Fargo violated New Jersey's LAD.

Nevertheless, the language of Fed. R. Civ. P. 15(c) allows for relation back where the claim arises of the conduct in the original pleading. Based upon that, and the liberality of allowing for amended pleadings, this Court finds that the LAD claim relates back to the original filing, and the statute of limitations does not apply.

### B. Failure to State a Claim

    (i)    NJ Law Against Discrimination

The LAD is a comprehensive civil rights statute that protects individuals from discrimination in such areas as housing, employment, lending, labor, public accommodation, and general financial transactions. The Source of Income Provision makes it unlawful in the State of New Jersey:

> (i) For any person, bank, banking organization, mortgage company, insurance company or other financial institution, lender or credit institution involved in the making or purchasing of any loan or extension of credit, for whatever purpose, whether secured by residential real estate or not, including but not limited to financial assistance for the purchase, acquisition, construction, rehabilitation, repair or maintenance of any real property or part or portion thereof or any agent or employee thereof…

> (4) To discriminate against any person or group of persons because of the source of any lawful income received by the person or the source of any lawful rent payment to be paid for the real property."

N.J.S.A. § 10:5-12. Remedies for a violation of the LAD include, "[a]ll remedies available in common law tort actions . . . in addition to any provided by this act or any other statute." N.J.S.A. § 10:5-13.

The 1981 predecessor to the Source of Income Provision, N.J.S.A. § 2A:42-100 (enacted in 1981 as P.L. 1981, c. 323 and repealed by P.L. 2002, c. 82, § 7), was enacted with the purpose of, in the words of Governor Byrne "protect[ing] from housing discrimination welfare recipients, spouses dependent on alimony and child support payments and tenants receiving governmental rental assistance." Office of the Governor of New Jersey, News Release at 1 (Dec. 9, 1981), as quoted in Franklin Tower One, LLC v. N.M., 157 N.J. 602, 725 A.2d 1104 (1999).

In Franklin Tower One, a landlord refused to accept Section 8 housing vouchers for use in the payment of rent, due to the fact that the landlord had chosen not to participate in that federal program. The New Jersey Supreme Court rejected the landlord's position. The Franklin Tower One decision triggered the enactment of the current Source of Income Provision. The legislative statement accompanying the bill stated:

> The bill follows the decision of Franklin Tower One L.L.C. v. N.M., 157 N.J. 602 (1999) in which the New Jersey Supreme Court held that New Jersey law requires a landlord to accept a federal Section 8 voucher from an existing tenant who obtains one during the course of his or her tenancy. A landlord, therefore, cannot refuse to rent to families or individuals solely because they will be using a Section 8 voucher to help pay the rent. The bill would also prohibit discrimination by lending institutions or others to persons holding Section 8 vouchers who are eligible for the new federal Section 8 home ownership program.

Statement to Assembly, No. 710 (Feb. 21, 2002). The focus of the legislative history is on discrimination against people utilizing public assistance to obtain rental housing. But Governor

Byrne's statement references non-public assistance income, specifically alimony and child support payments. And the legislative statement specifically references home ownership versus solely rental housing.

Debtor notes that the broad reach of the statute, without the limits to only rental housing or public assistance, is reinforced by its language when compared with other similar statutes. Massachusetts, for example, limits the protection to recipients of public assistance:

> It shall be an unlawful practice...For any person furnishing credit, services or rental accommodations to discriminate against any individual who is a recipient of federal, state, or local public assistance, including medical assistance, or who is a tenant receiving federal, state, or local housing subsidies, including rental assistance or rental supplements, because the individual is such a recipient, or because of any requirement of such public assistance, rental assistance, or housing subsidy program.

ALM GL ch. 151B, § 4(10). The District of Columbia has a similar provision: "[t]he monetary assistance provided to an owner of a housing accommodation under section 8 of the United States Housing Act of 1937, approved August 22, 1974 (88 Stat. 662; 42 U.S.C. § 1437f), either directly or through a tenant, shall be considered a source of income under this section." D.C. Code § 2-1402.21 (a), (e). Maine also has a prohibition on housing discrimination source of income that is limited to recipients of public assistance that makes it unlawful "[f]or any person furnishing rental premises or public accommodations to refuse to rent or impose different terms of tenancy to any individual who is a recipient of federal, state or local public assistance, including medical assistance and housing subsidies, primarily because of the individual's status as recipient." 5 M.R.S. § 4581-A(4).

Debtor posits that any analysis of the legislative history of the LAD is largely superfluous. The plain language of the statute holds that a lender may not discriminate against a borrower based on "the source of any lawful income." Therefore, Wells Fargo may not

discriminate against James's commission-based income as a source. She submits that accounting for the structure and legislative history of the law only reinforces this notion.

To begin, this Court notes that it appears the primary purpose of the law is to help less fortunate members of society obtain housing. It is not apparent that Debtor and James are among the group the law was meant to protect. Here, in 2005 Debtor obtained a loan secured by a note and mortgage issued in her name alone. Only she has a legal obligation to repay the note. James is under no legal obligation to either pay the note directly or to contribute to the payment of his wife's mortgage debt. Because James did not sign the note, his income is not subject to direct collection attempts made by Wells Fargo.

Debtor now seeks a modification of the note, apparently relying only on James's income. She now cries foul when, after a substantial default, her bank refuses to fully credit the income of a person who has no liability for repayment of the note when considering her request for a modification of the original loan. This scenario is vastly different from the scenario in Franklin Tower One.

Wells Fargo presents three primary arguments as to why the Source of Income Provision does not apply: (1) a loss mitigation application for a loan in default does not involve an extension of credit; (2) the income was that of the Debtor's non-borrower husband; and (3) variable commission income does not fall within the sweep of the Source of Income Provision. Each argument will be addressed in turn.

(a) Loss Mitigation as Extension of Credit

The LAD prohibits discrimination "in the making or purchasing of any loan or extension of credit." *See* N.J.S.A. § 10:5-12(i). Wells Fargo argues that the LAD does not apply because a

loss mitigation application for a loan in default does not involve an extension of credit. In support, Wells Fargo string cites to a series of unpublished, out of district opinions. *See, e.g.*, Carter v. Bank of Am., N.A., No. EDCV 15-1474- MWF(DTBx), 2015 WL 12732427, *4, 2015 U.S. Dist. LEXIS 186910 (C.D. Cal. Oct. 22, 2015) (finding loan modification neither a refinancing nor an extension of new credit in context of allegation of TILA violation); Johnson v. Bank of Am., N.A., No. 1:11–CV–42, 2014 WL 6694013, *1, 2014 U.S. Dist. LEXIS 169028 (D. Idaho Sept. 16, 2014) (loan modification was not a refinancing or an extension of credit in TILA context); De Jose v. EMC Mortg. Corp., No. C–11–00139 JCS, 2011 WL 1539656, *7, 2011 U.S. Dist. LEXIS 57751 (N.D. Cal. 2011) (loan modification does not constitute either an extension of credit or a refinancing under TILA); Norton-Griffiths v. Wells Fargo Home Mortgage, No. 10-CV-169, 2011 WL 61609, *6, 2011 U.S. Dist. LEXIS 2348 (D. Vt. Jan. 4, 2011) (court analyzed application of TILA and Home Ownership Equity Protection Act of 1994 HOEPA to forbearance agreement and loan modification). No further analysis is provided. The Court does not find any of the cited cases helpful. Each examines application of the Truth in Lending Act to loan modifications, not whether loan modifications can be considered extensions of credit when applying laws against discrimination. In fact, contrary to Wells Fargo contention, at least one of the decisions cited found in favor of the bank on allegations of violation of RESPA on factual grounds, implying that it considered RESPA requirements applicable to the loan modification process, thereby equating loan modification to an extension of credit in that context. *See* Johnson, 2014 WL 6694013 at *2.

Debtor, on the other hand, cites extensively to guidance from federal and state courts and agencies. Federal law applicable to loan modifications consider modifications an extension of credit. For example, the Consumer Finance Protection Bureau ("CFPB") issued a directive prior

to the current version of RESPA's Regulation X, which explained that credit rules apply to loan modification applications, stating that "as the definition of credit includes that right granted by a creditor to an applicant to defer payment of a debt, a loan modification is itself an extension of credit and subject to ECOA and Regulation B." CFPB Laws and Regulations, June 2013, P. 2. The Federal Reserve Board of Governors issued similar guidance prior to the passage of the Making Homes Affordable Program, explaining that a loan modification such as HAMP is an extension of credit. *See* Federal Reserve Board of Governors, Division of Consumer and Community Affairs: Mortgage Loan Modifications and Regulation B's Adverse Action Requirement, December 4, 2009, p. 1-2.

The New Jersey Supreme Court has found that "post-foreclosure judgment agreements…were both in form and substance an extension of credit to the [borrower] originating from the original loan." Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 564 (2011).

Like the cases cited by Wells Fargo, the authorities cited by Debtor do not reference the LAD. Nevertheless, this Court finds that the LAD's definition of "extension of credit" must include a loan modification. A complete reading of the LAD supports this conclusion. The LAD casts a wide net over the services it reaches. It specifically refers to loan modifications in section (i)(1), making it unlawful for financial institutions involved in the making or purchasing of any loan or extension of credit:

> To discriminate … in the granting, withholding, extending, modifying, renewing, or purchasing, or in the fixing of the rates, terms, conditions or provisions of any such loan, extension of credit or financial assistance or purchase thereof or in the extension of services in connection therewith.

N.J.S.A. § 10:5-12(i)(1), *emphasis added*. There is no dispute that The LAD prohibits discrimination in reviewing loan applications. It is nonsensical and contrary to the language of

the LAD to find that the broad reach of services listed in section (i)(1) of the LAD would be limited in the following subsections.

(b) Treatment of Income of Non-Borrower Husband

The Debtor is correct in urging this Court to begin its interpretation of the statute by first looking at its plain language. The Third Circuit has labeled this as the "cardinal canon of statutory interpretation." *See* In re Philadelphia Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." Id., *citing* Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146 (1992). Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history. Id., *citing* AT&T, Inc. v. F.C.C., 582 F.3d 490, 498 (3d Cir. 2009).

But the plain language of the statute supports the position of Wells Fargo that the Source of Income Provision of the LAD does not apply where the source of the income is the Debtor's non-borrower husband. The LAD prohibits discrimination in reviewing "lawful *income received by the person*" applying for a loan or extension of credit. *See* N.J.S.A. § 10:5-12(i)(4), *emphasis added*.

According to the schedules filed in connection with her August 2017 bankruptcy filing, Debtor had no income. On Schedule I, she attributes a gross monthly income in excess of $17,000.00 to James. She notes that she has been a "self-employed, stay at home mom" for 13 years. She attaches to Schedule I information about two businesses, one of which she lists as "50% ownership." But no interest in either of these businesses appears on Schedule A/B and it

does not appear that she receives income from either business. Her monthly reports characterize her income as "contribution from husband." That contribution does not appear to be the entirety of his income. Notably, the total contribution over the 30-month bankruptcy averages out to be approximately $5,733 per month, an amount less than the amount Wells Fargo credited to Debtor during the loan modification process. According to Debtor's bankruptcy filing, James is the recipient of the income, not Debtor. Since James is not the person applying for the loan or extension of credit, the LAD does not apply.

In so finding, this Court is aligned with another bankruptcy court in this district that was presented with factually analogous circumstances and upon which Wells Fargo heavily relies. That case held:

> [T]he plain language of the statute requires the discrimination to relate to income attributable to the aggrieved person . . . Here, the income that is the subject of the Amended Complaint "is derived from her husband's sales commissions," rather than the [d]ebtor. Additionally, the [d]ebtor is the plaintiff, and [d]ebtor's husband is not a party to this action.

In re Coppola, 596 B.R. 140, 167 (Bankr. D.N.J. 2018). But Debtor contends that this reading of the LAD is incorrect. While Debtor advises this Court to conduct a "plain-language" analysis of the LAD, she ignores her own advice and refers to guidance relating to the LAD from the New Jersey Attorney General's Office, which includes child support, alimony, and gifts from family members as "sources of income" contemplated by the LAD. From this guidance, she deducts that income provided by a spouse must also be included, stating that to do otherwise would give married couples who live together less protection from civil rights statutes than couples who are separated or divorced.

The Court first notes the obvious, that awards of alimony and child support trigger legal obligations to pay. They arise from court orders and can be enforced through legal process. The "contribution" made by James is not subject to such enforcement. This Court can only guess what the Attorney General's guidance means by "gifts from family members" as sources of income. Does it mean that monetary gifts to assist a family member with a down payment on a home purchase should be considered a source of income? Should an annual check placed into a birthday card by Aunt Mary be considered a source of income for securing housing so as not to violate the LAD? The Court doubts this could be true. It is just this type of forced conjecture that the rules of statutory interpretation are designed to avoid.

Returning to the language of the statute, Debtor does not receive James's income, James receives James's income. Because James is not an obligor on the note, he is under no obligation to pay Wells Fargo. Nor is James obligated to contribute his income to Debtor. Wells Fargo is well within its rights to decline to consider his income without violating the LAD.

As to Debtor's argument that married couples should not be treated differently than separated or divorced individuals, the fact is that bankruptcy law, tax law, and marital law does treat them differently. The LAD does not supersede or invalidate these laws and their instruction cannot be ignored.

For example, tax law states that "[t]he filing of joint tax returns does not alter property rights between husband and wife. In particular, the filing of a joint return does not have the effect of converting the income of one spouse into the income of another." Callaway v. Comm'r of Internal Revenue, 231 F.3d 106, 117 (2d Cir. 2000) (citations omitted). So, the fact that Debtor and James filed a joint tax return is of no moment.

Debtor may argue that, for the purposes of the LAD, she "receives" James's income pursuant to some general marital right to all joint income. The New Jersey Supreme Court has stated that the institution of marriage, "is a shared enterprise, a joint undertaking, that in many ways is akin to a partnership." Rothman v. Rothman, 65 N.J. 219, 229 (1974). It has further recognized that "each spouse contributes something to the establishment of the marital estate, even though one or the other may actually acquire the particular property." Chalmers v. Chalmers, 65 N.J. 186, 194 (1974). But the New Jersey Supreme Court also recognizes that:

> [T]he equitable distribution statute does not authorize the distribution of marital assets except upon the divorce of the parties. By the plain terms of the statute, a spouse's right to share in marital property by virtue of equitable distribution arises when "a judgment of divorce ... is entered." The Court has consistently interpreted the statute to authorize a distribution of marital assets only on the condition that the marriage of the parties has been terminated by divorce.

Carr v. Carr, 120 N.J. 336, 342 (1990) (citations omitted). To the extent James's income can be considered a marital asset, should he choose to divert it away from the marriage "partnership," Debtor would have little recourse outside of a matrimonial proceeding. A divorce may obligate James to make support payments, which could fall under the purview of the LAD. That is not the case for Debtor here.

Succinctly, Debtor has no legal right to James's income, and therefore she is not receiving it as per the Source of Income Provision. Notably, despite Debtor having no right to the income, Wells Fargo nevertheless credited Debtor with half of James's income in the loss mitigation process. The Court accepts this as fair and equitable. Debtor cannot choose to sign a note and mortgage on her own yet demand that Wells Fargo look beyond her own ability to pay when considering her request that the loan be modified. This is patently unfair, and unsupported by the LAD.

(c) Treatment of Commission Income

Wells Fargo's final contention is that commission income does not fall within the sweep of the Source of Income Provision. It makes the distinction between discrimination based upon the "source" of income versus the "form" of income. Wells Fargo interprets the LAD to forbid discrimination as to the source, for example public assistance or alimony, but not as to the form, for example, straight salary versus commission.

The In re Coppola court addressed this issue, noting that the bank has a right to evaluate the quality or consistency of an applicant's income irrespective of its source. In re Coppola, 596 B.R. at 167-68. The Coppola court held:

> In sum, if a Bank chooses to discount – or even reduce to zero – commission income, that is not discrimination but the exercise of necessary discretion in evaluating whether to extend credit or offer a loan modification. To take away this necessary discretion based on NJLAD would sweep too broadly….Finally, reading NJLAD as broadly as the Debtor suggests would indirectly allow the Debtor to do what RESPA and Regulation X say you cannot do – claim a violation of those laws and regulations based on a lender's discretionary determination not to grant a loan modification.

Id. at 168 (emphasis in original). This Court agrees with In re Coppola. The intention of the LAD cannot be to legislate generally accepted business principles used by financial institutions to determine whether to make a loan. The LAD requires financial institutions to consider any and all income received from any legal source. It prohibits the application of non-economic value judgments as to whether the source is an acceptable source. It is not meant to usurp the ability of the financial institution to make an appropriate business decision applying traditional economic factors. Receipt of income from sales commissions may be less consistent and reliable than income received from a monthly social security or welfare check. The LAD does not require financial institutions to ignore reality.

      (ii)      <u>New Jersey Consumer Fraud Act</u>

The sole basis for the Debtor's CFA claim in the Amended Complaint is Wells Fargo's alleged violations of the LAD as an unconscionable commercial practice. Wells Fargo submits that without a violation of the LAD, the CFA claim must also necessarily fail. Debtor has not made any argument to the contrary. Because this Court has found that the Debtor is unable to sustain a claim under the LAD, the CFA claim has no basis.

## VI.    <u>Conclusion</u>

Debtor's motion to amend the complaint is denied because the amendment would be futile. First, the Court finds that the LAD applies to loan modifications like the Debtor is seeking herein. Second, the Court finds that the LAD does not require consideration of income received by a non-borrower spouse in a loan modification application. This finding instructs denial of Debtor's motion to amend the complaint.

Even if the Court were to conclude the opposite, the facts of this case would still support denial of the motion. In this case, Wells Fargo considered the income received by Debtor's non-borrower spouse. Debtor argues that Wells Fargo violated the LAD in the method it used to evaluate her non-borrower spouse's income. But the Court finds that the LAD does not prevent a financial institution from weighing the consistency and reliability of a legal income source. The LAD does not supplant the business judgment of a financial institution. This third finding also supports denial of her motion.

Finally, absent grounds for a finding that Wells Fargo violated the LAD, Debtor alleges no basis to support a finding that Wells Fargo violated the Consumer Fraud Act.

For all of these reasons, the motion to amend is denied.

Dated: April 23, 2020

/s/Christine M. Gravelle
United States Bankruptcy Judge